## FUNK v. ÆTNA LIFE INS. CO. OF HARTFORD, CONN.

### No. 8658.

Circuit Court of Appeals, Ninth Circuit.
March 2, 1938.

Charles W. Cradick, of Los Angeles, Cal. (William H. Haupt, of Los Angeles, Cal., of counsel), for appellant.

Gibson, Dunn & Crutcher, Norman S. Sterry, and Philip C. Sterry, all of Los Angeles, Cal. (Ira C. Powers and Frederic H. Sturdy, both of Los Angeles, Cal., of counsel), for appellee.

Before GARRECHT, MATHEWS, and HANEY, Circuit Judges.

GARRECHT, Circuit Judge.

This action was brought by the appellant as beneficiary under an accident policy issued to Ralph B. Funk by the appellee.

The policy contained the standard provisions required by the statutes of the State of California, chapter 614, § 3, Statutes 1917, p. 958. The first of said provisions reads:

"This Policy includes the endorsements and attached papers if any, and contains the entire contract of insurance except as it may be modified by the Company's classification of risks and premium rates in the event that the Insured is injured after having changed his occupation to one classified by the Company as more hazardous than that stated in the Policy, or while he is doing any act or thing pertaining to any occupation so classified, except ordinary duties about his residence or while engaged in recreation, in which event the Company will pay only such portion of the indemnities provided in the Policy as the premium paid would have purchased at the rate but within the limits so fixed by the Company for such more hazardous occupation.

"If the law of the state in which the Insured resides at the time this Policy is issued requires that prior to its issue a statement of the premium rates and classification of risks pertaining to it shall be filed with the state official having supervision of insurance in such state, then the premium rates and classification of risks mentioned in this Policy shall mean only such as have been last filed by the Company in accordance with such law, but if such filing is not required by such law, then they shall mean the Company's premium rates and classification of risks last made effective by it in such state prior to the occurrence of the loss for which the Company is liable."

The complaint alleged, and the answer admitted, that all renewal premiums had been paid to the time of decedent's death, and that he was drowned on the 29th day of June, 1934, while fishing for recreation.

The policy states that "The Insured's occupation and duties thereof are fully described as follows: Tool checker, office and traveling duties." And it further states that "The Insured's occupation is classified by the Company as 'Preferred'."

The answer of the appellee alleged that on or about July 9, 1931, the insured, without notice to or knowledge of the defendant, had changed his occupation to that of an oil well pump man, which occupation under the provisions of appellee's classification of risks last filed with the Commissioner of Insurance of the State of California was classified as "Medium," and that the sum of $2,000 was the maximum amount of insurance payable in case of death to any person engaged in any occupation so classified. Appellee offered to allow judgment to be entered against it in that amount. A jury was waived and the case tried to the court. At the conclusion of the trial, the defendant was permitted to file an amendment to its answer which, under the findings of fact and conclusions of law made by the court, is not material here.

Among others, the court made a finding of fact as follows: "The Court finds that from and after the date of the application for and issuance of the aforesaid policy of insurance to said Ralph B. Funk, and up until the 9th day of July, 1931, the said Ralph B. Funk continued in his employment by the General Petroleum Corporation as 'tool checker', whose duties were office work and traveling. That on said last mentioned date the said Ralph B. Funk changed his said occupation from that of 'tool checker, office and traveling duties' to that of 'oil well pumper' and until the time of his death, which the Court finds was due solely to accidental means continued in said occupation of 'oil well pumper', and the Court further finds that the occupation of 'oil well pumper' was at all times mentioned classified by the defendant as a more hazardous risk than the occupation of 'tool checker, office and traveling duties' and that the maximum amount of insurance obtainable from the defendant for one engaged in the occupation of 'oil well pumper' was $2,000.00," and based thereon a conclusion of law to the same effect. Judgment was entered in favor of appellant in the sum of $2,000, from which she appeals.

This is an action at law in which, by written stipulation, a jury was waived. In such cases the statute provides that "The finding of the court upon the facts, which may be either general or special, shall have the same effect as the verdict of a jury." R.S. § 649, 28 U.S.C.A. § 773.

There was no motion or request at or before the close of the trial to find generally for the plaintiff, or to make special findings in favor of the plaintiff, and there was no ruling of the court on that question. In this state of the record it is well settled that this

court is without jurisdiction to consider the sufficiency of the evidence to support the findings. Edwards v. Robinson et al., 9 Cir., 8 F.2d 726; Continental Nat. Bank v. National City Bank, 9 Cir., 69 F.2d 312.

■ Appellant, however, insists that in this case there is a total want of evidence to support the findings of the court and the judgment entered thereon. It is urged that in such circumstances an error of law is presented which is reviewable on appeal. Assuming, without conceding, the correctness of this proposition, it suffices to say that, in this case, there was substantial evidence upon which the findings and judgment could be predicated.

There remains then for our consideration only the alleged error, of law claimed by appellant as resulting from the District Court's erroneous interpretation of the provisions of the insurance policy above quoted.

Appellant insists that, even if the insured had changed his occupation to one classified as more hazardous, the fact that the insured was fatally injured while engaged in recreation entitled appellant to recover the full amount of the policy payable on a preferred risk.

In support of this contention appellant cites Business Men's Assur. Co. of America v. Bradley, Tex.Civ.App., 275 S.W. 622; and Friend v. Business Men's Assur. Co., 141 Kan. 470, 41 P.2d 759.

The first case cited is from the Texas Civil Court of Appeals. The court held that there had been no change of occupation which of itself was determinative of the case. The court then went on in its opinion to say that accidents, occurring while the insured was engaged in recreation, were excepted from the provisions covering a change by the insured to an occupation more dangerous than that under which he was originally insured.

The finding that there had been no change of occupation was clearly sufficient to sustain the decision. That portion of the opinion which went further and undertook to construe the provisions of the contract as applied to a case where the insured had changed his occupation, which the court had affirmatively determined was not the fact, might well be regarded as obiter dicta.

The second case cited, Friend v. Business Men's Assur. Co., supra, was by a divided court. The majority opinion was based upon the assumption that there was an ambiguity as to the meaning of the language used, and in this connection said (page 760 of 41 P.2d) : "After much deliberation and taking into consideration the fact that the policy contract was formulated by defendant, and that defendant could easily have specified the extent of its obligation so plainly that there would be no room to cavil about its meaning, a majority of this court have determined that the fairest construction of the plethora of words comprising the paragraph is to hold that the exception to the exception means that where the accident occurs while the insured is engaged in ordinary duties about his residence or while engaged in recreation the provision for reduced liability when the insured engaged in a more hazardous occupation does not govern, and that the full amount of the original liability controls."

There were two dissenting opinions very much to the point and so brief that it might be illuminating to quote them here.

"Dawson, Justice (dissenting).

"I can neither discern any difficulties of construction in the paragraph of the insurance contract submitted for our consideration nor any semblance of justice in the judgment of this court. I therefore dissent.

"Burch, Justice (dissenting).

"My interpretation of the provision of the policy is this: The amount to be paid in case of injury or sickness may be reduced in two ways:

"First, when the insured in fact changes his occupation to one more hazardous. In that event the benefit in case of injury or sickness is ipso facto reduced to the proportionate amount the premium would purchase according to classification of risk. That is fair and just and reasonable.

"Second, amount of benefit is reduced when the insured, without changing his occupation to a more hazardous one, engages in some activity pertaining to a more hazardous occupation, and is injured or becomes sick. In that event, the benefit is reduced to the proportionate amount the premium would purchase according to classification of risk. That is fair and just and reasonable.

"If the insured, without changing occupation, engages in some more hazardous activity, the benefit is not reduced if injury or sickness occur, not in connection with the more hazardous activity, but in connection

with ordinary duties about the insured's residence, or recreation. That is fair and just and reasonable.

"By relating the exception to the provision next to it, ambiguity is avoided."

■ The majority opinion in the case of Friend v. Business Men's Assur. Co., supra, was based upon the assumption that the meaning of the exemption clause was ambiguous and in that connection said: "The policy contract was formulated by defendant, and that defendant could easily have specified the extent of its obligation so plainly that there would be no room to cavil about its meaning." We are urged to follow this ruling here. It is further argued that, the appellee having issued this policy containing this discussed provision after at least two courts had placed a construction upon the language thereof, it must now be presumed to have adopted such contruction. While there are some decisions that sustain this argument, others do not.

The early precedents for the rulings here invoked were rested on the fact, as the decisions recite, that, the insurance companies having framed the contract, the meaning of the language employed, if doubtful, was to be construed favorably to the insured. In this case it is admitted that the language of the policy involved is embodied in a state statute and appellee had no choice but was required to embody it in its policy. There also are decisions to the effect that where the meaning of the statute is doubtful that the interpretation should be favorable to the insured rather than to the insurer. Levington v. Ohio Farmers' Ins. Co., 267 Pa. 448, 110 A. 295; Gratz v. Ins. Co. of N. A., 282 Pa. 224, 127 A. 620. On the other hand, there are many cases holding that, where the terms of the contract were not formulated by the insurer but were prescribed by statute, this rule of construction is inapplicable. Rosenthal v. Insurance Co. of North America, 158 Wis. 550, 149 N.W. 155, 156, L.R.A.1915B, 361, Ann.Cas.1916E, 395; Gallopin v. Continental Cas. Co., 290 Ill.App. 8, 7 N.E.2d 771, 772; Wilcox v. Massachusetts Protective Association, 266 Mass. 230, 165 N.E. 429, 431; Del Guidici v. Importers & Exporters Ins. Co., 98 N.J. L. 435, 120 A. 5, 6; Frozine v. St. Paul F. & M. Ins. Co., 195 Wis. 494, 218 N.W. 845, 846; and Sturgis National Bank v. Maryland Casualty Co., 252 Mich. 426, 233 N.W. 367, 369.

Even if it is assumed that the insurance company had knowledge of these decisions from the Texas Court of Civil Appeals and from the Kansas Supreme Court, nevertheless, the provisions of the policy here being considered were not left to the choice of appellee but were imposed by legislative enactment. To the contention that the Legislature in adopting the standard policy also adopted the construction placed thereon by these courts it is sufficient answer to point out that the California statute was enacted long prior to either of these decisions.

These cases were brought to the attention of the lower court, and for well-stated reasons it declined to follow them and in this we find no error.

It was stipulated that the maximum limits of insurance that could be secured by one engaged in the occupation of an "Oil Well Pump Man" was $2,000 and the premiums paid by insured would purchase no greater amount.

■ Having considered all the facts in the case and the law as properly applied, we find the interpretation of the policy as declared by the lower court was fair and reasonable, and we concur in its conclusion well expressed in the following language:

"The provision of a contract of insurance that the amount of premium paid to insure against a hazard in one occupation shall provide a reduced indemnity where the occupation is changed to one more hazardous than the original is entirely reasonable and in accordance with safe insurance methods. The degree of hazard, based as it is on figures of actuaries, governs the amount of premium required. When, therefore, without knowledge or consent of the company, the occupation and therefore the degree of hazard changes, the amount paid as premium is applied to the new situation with the result that the amount of indemnity is reduced.

"It seems * * * therefore, that the paragraph in question means that the amount of indemnity is reduced in two events: (1) If the insured is injured after having changed his occupation to one classed by the insurer as more hazardous than the occupation stated in the policy; and (2) if the insured, although not having changed his occupation, is nevertheless doing any act or thing appertaining to a more hazardous occupation than that insured against other than ordinary duties about his residence or while engaged in recreation.

"The agreed statement of facts shows that the first condition exists. It follows, therefore, that the plaintiff can recover only the lower indemnity." D.C., 20 F.Supp. 90, 92.

Affirmed.